[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT, SHELBY WILLIAMS' MOTION TO DISMISS
This is an action commenced by plaintiff, Center CT Page 5876 Capital Corporation (hereinafter, "Center Capital") on July 8, 1992, against the defendants Charles H. Hall, III (hereinafter, "Hall") and Shelby Williams Industries, Inc. (hereinafter ("Shelby Williams"). Shelby Williams filed a motion to dismiss pursuant to Section 142 of the Practice Book (the "Motion to Dismiss"). The basis for the Motion to Dismiss is Shelby Williams' claim that this court lacks personal jurisdiction over it. Limited discovery directed to the jurisdictional issue has been taken.[1] Center Capital claims the discovery has established that Shelby Williams, acting through its regional vice-president Hall, misrepresented to Center Capital that certain parties, collectively referred to here as Lessees, who were seeking capital from Center Capital had purchased and paid for over $181,000.00 worth of Shelby Williams' furniture and equipment.
It further claims it received a written communication from Shelby Williams, signed by Hall, containing the misrepresentation, and relied upon it in underwriting a transaction with the applicants, lessees. Center Capital bought and leased back to the applicants "lessees" the equipment and furniture allegedly purchased from Shelby Williams. Center Capital was subsequently damaged when the lessees later defaulted on payments due.
Center Capital has raised claims against Shelby Williams and Hall sounding in negligent and intentional misrepresentation, conversion, theft under Conn. Gen. Stat. 52-564, unfair trade practices, and conspiracy to injure Center Capital's business and trade under Virginia statute 18.2-499, et. seq. It asserts the discovery taken, to date, establishes plaintiff claims, that its losses arise out of tortious conduct by Shelby Williams in Connecticut, which, in consequence, caused injury to Center Capital within Connecticut, and that, therefore, the requirements for long-arm jurisdiction under Conn. Gen. Stat. 33-441 (c)(4) are met. Center Capital claims the evidence also supports Center Capital's allegations that Shelby Williams should reasonably have expected his misrepresentations to have an effect in Connecticut. This court agrees with the assertions made by Center Capital. This court finds that statutory requirements under Conn. Gen. Stat. 33-411 (c)(4) are fulfilled. It finds also that justification has been provided for the assertion of long-arm jurisdiction under the Constitution of the United States. Williams' Motion to Dismiss is properly denied. CT Page 5877
In the fall of 1990, Center Capital began to negotiate a proposed sale-leaseback of furniture, equipment and furnishings to be installed in a new restaurant in Vienna, Virginia. The new restaurant was named The Company Inkwell, and is located at 8240 Leesburg Pike, Vienna, Virginia. Center Capital executed a lease of restaurant equipment and furnishings on or about December 26, 1990 with the following parties: Babic, Inc. T/A Co. Inkwell Club (hereinafter "Babic"); Holbert K. Farthing; J.S. Hayes Building Supplies; and J.L. Hayes, as were previously and are referred to collectively hereinafter as the "Lessees". The equipment leased is listed on the schedules to the Lease.
Center Capital paid $300,000.00 to the Lessees to purchase the equipment listed in a Schedule 02. The purported vendor of much of the equipment on Schedule 02 was Shelby Williams.
Prior to entering into the Lease, Center Capital took steps to verify that the Lessees had purchased the equipment and furnishings which Center Capital was to purchase from, and lease back to, the Lessees. As part of those efforts, Center Capital required proof that Shelby Williams had sold equipment and furnishings to the Lessees, and received payment in full. Center Capital obtained a letter which stated, in pertinent part, that "Invoice dated 12/26/90 totaling $181,024.00 has been paid in full by Babic, Inc." The document, which is referred to hereinafter as the "Letter", was written and signed by Hall on the letterhead of Shelby Williams.
Center Capital received the Letter on or about December 26, 1990. Attached to the Letter was a document identified in the Letter as an "invoice". The "invoice" identifies specific items of equipment, including chairs, stools and custom settees, and their prices. The Invoice, which is prepared on Shelby Williams letterhead, is addressed to Mr. Sam McMichael, The Company Inkwell, 8240 Leesburg Pike, Vienna, VA 22180. Among the items contained on the Invoice are charges for "Freight to Virginia", and "Installation of custom settees". The Invoice states "Total Invoices Paid to Date" are $181,024.00". Hall prepared and signed the Invoice.
The representations made by Hall and Shelby Williams CT Page 5878 to Center Capital in the Letter and Invoice were false, and were known to be false at the time they were made. Shelby Williams never delivered any equipment or furnishings to Babic or The Company Inkwell restaurant. Shelby Williams had not received payment for the items on the Invoice when the Letter and Invoice were prepared by Hall.
Hall was, at all relevant times, a regional sales vice-president for Shelby Williams. His duties included the solicitation of business for the Washington D.C./Central Atlantic area, including the area of Vienna, Virginia. In executing the Letter and Invoice, Hall was acting in furtherance of his duties as regional vice-president of Shelby Williams. Hall admits that he conducted negotiations with Sam McMichael, the president of Babic, regarding the purchase from Shelby Williams of chairs, stools, custom settees, and formal dining rooms, which had a total price over $170,000.00. Hall claims that in December, 1990, McMichaels asked him to draft the Letter, and Hall complied by preparing and executing the Letter.
The Letter is addressed to Center Capital Corp., 20 Tower Lane, Avon, Connecticut. This address is Center Capital's principal place of business, and the location at which Center Capital received the Letter. The Letter was received on or about December 26, 1990. Shortly afterward, in reliance upon the representations made by Hall and Shelby Williams in the Letter and the Invoice, Center Capital decided to advance funds totalling over $180,000.00 to the Lessees for the sale and leaseback of the equipment listed in the Invoice. Center Capital, claims it, in further reliance upon the representations made by Hall and Shelby Williams, advanced additional funds to the Lessees for the sale and leaseback of other equipment to be used at The Company Inkwell restaurant. The total amount of money advanced to the Lessees by Center Capital, it claims, in reliance upon the misrepresentations in the Letter and Invoice was $500,000.00. The Lease is in default and none of the Equipment has been found or repossessed.
Shelby Williams is incorporated in Delaware. It is not, and never has been, licensed to transact business in Connecticut. Shelby Williams employs two salespeople to cover the state of Connecticut. Their sales calls are made in person, by phone, and by mail. Between 1985 and 1991, Shelby Williams shipped goods with a value of $6,294,000.00 into the State of Connecticut. CT Page 5879
In determining whether personal jurisdiction exists over an individual pursuant to the Connecticut long-arm statute, a two pronged inquiry must be made. Frazer v. McGowan,198 Conn. 243, 246 (1986); Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245, 250 (1983). The first inquiry is whether the long-arm statute authorizes the court to assert jurisdiction. Frazer, 198 Conn. at 246. Secondly, the court must determine whether the exercise of long-arm jurisdiction would violate due process. Id.
Disputes concerning jurisdiction over the person are properly raised under Connecticut's rule of practice by a motion to dismiss. Chrysler Credit Corporation v. Fairfield Chrysler-Plymouth, Inc., 180 Conn. 223, 226 (1982); Practice Book 142 et. seq. Practice Book 143(2) provides that a "motion to dismiss shall be used to assert . . . (2) lack of jurisdiction over the person. . . ." The defendant Shelby Williams' motion to dismiss is founded upon his claim that this court lacks personal jurisdiction over it.
Where the jurisdictional basis for a claim is not clear on the face of the record because service is made under the long-arm statutes, additional facts establishing the minimum contacts required by due process may need to be shown. Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 54 (1983). Where a motion to dismiss for lack of personal jurisdiction raises a question of fact which cannot be determined from an examination of the record, the burden of proof rests on the plaintiff to present evidence which will establish jurisdiction. Id., 190 Conn. at 54. In meeting this burden of proof, the plaintiff is not required to prove the defendant's liability, but only the commission of acts in relation to the state which justify the court's exercise of jurisdiction. Stephenson, Conn. Civ. Proc. (2nd Ed.) 96, p. 390, citing Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957).
This court has personal jurisdiction over Shelby Williams under the provisions of Conn. Gen. Stat. 33-411(c). Shelby Williams committed a tortious act within Connecticut. Conn. Gen. Stat. 33-411(c), Connecticut's long-arm statute governing the assertion of jurisdiction by Connecticut courts over foreign corporations without regard to whether or not they transact business in Connecticut, provides in pertinent part: CT Page 5880
 Every foreign corporation shall be subject to suit in this state, . . . on any cause of action arising as follows: . . . (4) out of tortious conduct in this state, whether arising out of repeated activity of misfeasance or nonfeasance.
Shelby Williams is a foreign corporation, and the plaintiff's complaint raises claims of tortious conduct. The only real issue with regard to whether this long-arm statute confers personal jurisdiction over Shelby Williams is whether the tortious conduct alleged occurred in Connecticut.
Connecticut's federal court decisions construing the provisions of Conn. Gen. Stat. 33-411(c)(4) have decided this issue. Even where the sole contact of the defendants with Connecticut is to send fraudulent misrepresentations into Connecticut by mail and telephone, Connecticut courts have personal jurisdiction over the tortfeasors under Conn. Gen. Stat. 33-411 (c)(4). David v. Weitzman, 677 F. Sup. 95, 99
(D. Conn. 1987). Jurisdiction exists under Conn. Gen. Stat. 33-411 (c)(4) where the defendant sends fraudulent misrepresentations into Connecticut, because the tortious conduct is committed within Connecticut. See, Teleco Oilfield Services, Inc. v. Skandia Insurance Co., 656 F. Sup. 753, 758 (D. Conn. 1987); McFaddin v. National Executive Search, Inc.,354 F. Sup. 1166, 1171 (D. Conn. 1973).
The central facts necessary to establish personal jurisdiction over Shelby Williams are not in dispute. Shelby Williams admits that Hall executed the Letter and the Invoice. The Letter is addressed to Center Capital at its Connecticut headquarters. The Letter was received by Center Capital in Connecticut, and, it claims was, relied upon here. Hall was at all times acting in furtherance of his duties as a regional vice-president of Shelby Williams. Therefore, his acts are properly attributable to his employer, Shelby Williams. See, Bradlow v. American District Telegraph Co., 131 Conn. 192, 196
(1994).
This court's assertion of personal jurisdiction over Shelby Williams complies with due process requirements. Once it is determined that the requirements of Connecticut's long-arm statute have been met, the court must consider whether the CT Page 5881 exercise of personal jurisdiction over the defendant complies with the principles of due process. Due process requires that a nonresident defendant have "certain minimum contacts . . . such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154,90 L.Ed. 95 (1945). A due process analysis looks to two criteria, foreseeability and fairness. U.S. Trust Co. v. Bohart,197 Conn. 34, 41 (1985). In determining foreseeability, the court looks to whether the defendant's conduct with respect to the state asserting jurisdiction was such that he/she should reasonably anticipate being hailed into court in that state. World-Wide Volkswagen Corp. v. Woodson, 44 U.S. 286, 297,100 S.Ct. 559, 62 L.Ed.2d 490 (1980). State courts may assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state. "The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend `traditional notions of fair play and substantial justice.'" Frazer v. McGowan, 198 Conn. 243, 52 (1986), citing World-Wide Volkswagen Corp. v. Woodson, 44 U.S. 286, 297, 100 S.Ct. 559,62 L.Ed.2d 490 (1980). "All that is required is sufficient contact to make it reasonable and just, according to our traditional notions of fair play and substantial justice, to permit the state to enforce the obligations incurred there." Wedig v. Brinster, 1 Conn. App. 123, 129 (1983).
However, there is no constitutional obstacle to bringing a defendant into Connecticut to defend a claim arising out of tortious conduct committed in Connecticut upon a resident of Connecticut, even if the tort is a wholly isolated event. Buckley v. New York Post Corp., 373 F.2d 175, 179 (2d Cir. 1973). When a claim is specifically related to a defendant's contacts with the forum, the requirements of due process are met if the defendant has purposely directed his activities at residents of the forum, and the litigation results from injuries arising out of those activities. David v. Weitzman, 677 F. Supp. at 99, quoting Henry Heide, Inc. v. WRH Products Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985). The defendant purposely addressed the Letter and Invoice to Center Capital in Connecticut. Center Capital's damages and the resulting lawsuit, arise out of its claimed reliance upon the misrepresentations contained in the Letter and Invoice. The requirements of due process are therefore satisfied. See, generally, David v. Weizman, supra, [defendants' sole contact CT Page 5882 with Connecticut was to send into it by mail and telephone fraudulent misrepresentations]; Brown v. Flowers Industries, Inc., 688 F.2d 328 (5th Cir. 1982), cert. denied, 460 U.S. 1023
(1983); [single defamatory telephone call from outside state conferring long-arm jurisdiction meets due process requirements]; Froess v. Bulman, 610 F. Sup. 332, 336-37
(D.R.I. 1984) [single defamatory letter sufficient to comply with due process requirements]; and McFadden v. National Executive Search, Inc., 354 F. Sup. 1166, 1171 (D. Conn. 1973) [false representations entering Connecticut by wire or mail].
The facts before the court demonstrate that Hall and Shelby Williams engaged in purposeful activity which should have led them to reasonably anticipate being hailed into Connecticut's courts. Hall and Shelby Williams admit that Hall wrote the Letter, addressed to Center Capital in Connecticut. The Letter contained statements which were false, and known by Hall to be false. One who causes fraudulent misrepresentations to be communicated to Connecticut, either in person or through their agent, in order to induce a Connecticut corporation to act thereon, cannot claim surprise when called upon to answer in a Connecticut court. Therefore, the constitutional due process requirements for exercising personal jurisdiction over Shelby Williams are met on the facts before the court.
The defendant Shelby Williams' Motion to Dismiss is denied.
LEONARD W. DORSEY, S.T.R